**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| NATURAL EXTRACTION SYSTEMS, LLC<br><br>        Plaintiff,<br><br>vs.<br><br>SURTERRA TEXAS, LLC d/b/a GOODBLEND, and SURTERRA HOLDINGS, INC., d/b/a PARALLEL<br><br>        Defendants. | **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Natural Extraction Systems, LLC, ("NES" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendants Surterra Texas, LLC d/b/a Goodblend, ("Goodblend"), and Surterra Holdings, Inc., d/b/a Parallel, ("Parallel") (collectively, "Defendants") for patent infringement and alleges as follows:

### NATURE OF THE ACTION

1.     This action for patent infringement arises out of the infringement of NES's U.S. Patent No. 10,669,248 ("the '248 patent," Exhibit A), U.S. Patent No. 11,643,402 ("the '402 patent," Exhibit B), U.S. Patent No. 12,297,181 ("the '181 patent," Exhibit C), and U.S. Patent No. 12,420,214 ("the '214 patent," Exhibit D) (collectively, the "Asserted Patents") by Defendants. NES brings this action to compel Defendants both to compensate NES for their infringement of the Asserted Patents and to cease their ongoing and continuous infringement of the Asserted Patents.

2.     NES is a Colorado-based natural product extraction and distillation technologies company founded by inventor C. Russell Thomas in 2012.

3.      Mr. Thomas founded NES to develop safe, non-addictive, all-natural alternatives to prescription opiates based upon the promising potential of cannabinoids to treat pain, inflammation, and related conditions.

4.      By 2012, eighteen U.S. states had legalized medical cannabis, but orally-consumable medicinal cannabis products were typically prepared by extracting cannabinoids from cannabis with fuel-grade butane.

5.      Mr. Thomas was concerned about the potentially carcinogenic nature of butane extracts. He performed initial research on rosemary distillates to develop clean and safe alternatives to butane extracts by inventing methods to (i) evaporate aromatic molecules from plant material, (ii) physically separate the evaporated aromatic molecules from the plant material, and (iii) recondense the aromatic molecules into a distillate.

6.      The Farm Bill of 2018 legalized consumer products containing cannabidiol ("CBD") derived from industrial hemp containing less than 0.3% tetrahydrocannabinol ("THC"). Mr. Thomas recognized that products made from hemp oils could be safe, non-addictive, all-natural alternatives to prescription opiates for treating pain.

7.      Mr. Thomas adapted his research on rosemary to distill hemp oils and to manufacture wholesale and retail products from the distillates to treat pain and inflammation.

8.      NES filed U.S. Provisional Patent Application No. 62/717,235 ("the '235 application") on August 10, 2018, which discloses methods to distill and activate hemp oils in a single process step. Each of the Asserted Patents claims priority to the '235 application.

9.      Each of the Asserted Patents discloses methods to distill and activate cannabinoids in a single process step, including the activation of cannabidiolic acid ("CBDA") into CBD and the activation of tetrahydrocannabinolic acid ("THCA") into THC.

10.     Upon practicing the methods disclosed in the Asserted Patents, NES received consumer feedback that its resultant hemp oils displayed superior efficacy at treating pain, inflammation, and other conditions relative to competing cannabinoid products. NES subsequently became the world's leading manufacturer of certified USDA organic hemp extract by volume sold.

11.     Parallel is one of the largest privately-held cannabis companies in the United States with active operations in Texas, Florida, and Massachusetts.

12.     Goodblend is a Texas limited liability company and a subsidiary and alter ego of Parallel.

13.     Goodblend is licensed to operate in Texas as a dispensing organization that produces and distributes cannabis products under the State's "Compassionate Use Program."

14.     Together, Defendants generate hundreds of millions of dollars in annual revenue selling cannabis products including products made with cannabis distillate.

15.     NES derives revenue by licensing its intellectual property.

16.     Defendants do not license any intellectual property owned by NES.

17.     Defendants' success in the cannabis market comes at the expense of NES and its intellectual property rights.

18.     Defendants use processes that fall within the scope of various claims of each of the Asserted Patents.

19.     Defendants incorporate cannabis distillate made by processes that infringe various claims of the Asserted Patents into cannabis products, such as edibles, that Defendants market and sell to consumers in Texas and throughout the United States.

20.     The sale of products made with cannabis distillate generates hundreds of millions of dollars in annual revenue for Defendants without any compensation to NES for the use of its

intellectual property.

21.     NES brings this lawsuit seeking compensation that it is rightfully owed for the unauthorized use of its patented technology by Defendants and an injunction to enjoin Defendants from further unauthorized use of the patented technology.

## THE PARTIES

22.     Plaintiff NES is a limited liability company organized and existing under the laws of the State of Colorado, having a principal place of business in Boulder, Colorado.

23.     On information and belief, Defendant Goodblend is a corporation organized and existing under the laws of the State of Texas, having a principal place of business at 6912 Hergotz Lane, Austin, Texas 78742 and a registered address at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

24.     On information and belief, Goodblend operates a retail location at 4720 State Highway 121 North, Suite 180, Plano, Texas 75024.

25.     On information and belief, Defendant Parallel is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 55 Ivan Allen Jr. Boulevard NW, Suite 900, Atlanta, Georgia 30308, and a registered address at 251 Little Falls Drive, Wilmington, Delaware 19808.

26.     Goodblend is a subsidiary of Parallel. Ex. AA at 5.

27.     On information and belief, Defendant Parallel is a holding company that develops, produces, offers for sale, and sells cannabis products either directly or through subsidiaries, including Goodblend, in the State of Texas and in the Eastern District of Texas.

## JURISDICTION AND VENUE

28.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-27 as

though fully set forth herein.

29.    This action for patent infringement arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., including 35 U.S.C. § 271.

30.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

31.    This Court has personal jurisdiction over Defendants because each maintains sufficient minimum contacts with the forum as a result of business conducted within the State of Texas and within the Eastern District of Texas. This Court also has personal jurisdiction over the Defendants because each—either directly or through subsidiaries and/or intermediaries—practices methods that infringe claims of the Asserted Patents in Texas and in this District and/or makes, uses, offers for sale, sells, advertises, makes available, instructs others to use, and/or markets products made by infringing methods in Texas and in this District.

32.    This Court has personal jurisdiction over Goodblend because it maintains systematic and continuous contacts with Texas, it purposefully availed itself of the privileges of conducting business in Texas, and it sought the protection and benefits of the laws of Texas, and thus, Goodblend subjected itself to personal jurisdiction in Texas.

33.    This Court also has personal jurisdiction over Goodblend because Goodblend committed acts of infringement of claims of the Asserted Patents in Texas and in this District.

34.    Venue is proper in this District under 28 U.S.C. § 1400 as to Goodblend because Goodblend (1) maintains at least one physical, regular, and established place of business in this District and (2) committed acts of direct infringement in this District by practicing processes that infringe claims of the Asserted Patents in this District under 35 U.S.C. § 271(a) and/or by selling products made by processes that infringe claims of the Asserted Patents in this District under 35

U.S.C. § 271(g).

35.    Goodblend has a registered agent for service of process in Texas at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

36.    Goodblend does business in Texas. It operates a license to produce and distribute cannabis products in Texas under the State's "Compassionate Use Program."

37.    Goodblend maintains several physical, permanent, regular, and established places of business in Texas. Goodblend operates at least three branded dispensaries and seven "partner pickup" locations in Texas. *See* Ex. Y.

38.    Goodblend maintains one or more physical, permanent, regular, and established places of business in this District including the "goodblend – Plano" dispensary located at 4720 State Highway 121 North, Suite 180, Plano, Texas 75024.

39.    Goodblend sells, offers for sale, and/or distributes products, including products made by processes that infringe claims of the Asserted Patents, through a "partner pickup" located in this District at 1320 N. University Dr., Nacogdoches, Texas 75961.

40.    On information and belief, Goodblend makes products containing cannabis distillate by practicing processes that infringe claims of the Asserted Patents in Texas and in this District.

41.    Goodblend makes, uses, markets, offers for sale, sells, and/or distributes cannabis products, including cannabis-distillate-containing products made by processes that infringe claims of the Asserted Patents, at its dispensary and partner pickup locations throughout Texas including in this District at its "goodblend – Plano" dispensary and at its partner pickup location in Nacogdoches. Thus, Goodblend committed infringing acts in Texas and in this District.

42.    Goodblend employs numerous employees who work in Texas at Goodblend's

physical places of business including in this District at the "goodblend – Plano" dispensary.

43.     Goodblend is a subsidiary and alter ego of Parallel.

44.     This Court has personal jurisdiction over Parallel, through its alter ego Goodblend, because it maintains systematic and continuous contacts with Texas, it purposefully availed itself of the privileges of conducting business in Texas, and it sought the protection and benefits of the laws of Texas, and thus, Parallel subjected itself to personal jurisdiction in Texas.

45.     This Court also has personal jurisdiction over Parallel, through its alter ego Goodblend, because it committed acts of infringement of claims of the Asserted Patents in Texas and in this District.

46.     Venue is proper in the Eastern District of Texas under 28 U.S.C. § 1400 as to Parallel because Parallel (1) maintains at least one physical, regular, and established place of business in this District through its subsidiary and alter ego Goodblend and (2) committed acts of direct and/or induced infringement in this District by practicing or inducing the practice of processes that infringe claims of the Asserted Patents in this District under 35 U.S.C. § 271(a) and (b) and/or by selling or inducing the sale of products made by processes that infringe claims of the Asserted Patents in this District under 35 U.S.C. § 271(g).

47.     On information and belief, Goodblend and Parallel share corporate offices and registered mailing addresses including 55 Ivan Allen Jr. Blvd. NW, Suite 900, Atlanta, Georgia 30308 and 2324 W Lake Dr, Wimauma, Florida, 33598.

48.     On information and belief, Goodblend and Parallel share common ownership with Parallel owning 87.5% of Goodblend. Ex. AA.

49.     On information and belief, Goodblend and Parallel share or shared common directors, officers, and employees including, but not limited to, Marcus Ruark, Wes Van Dyk, and

Tabitha Krol.

50.    The Parallel website www.liveparallel.com describes Goodblend as one of its "brands" or "retail brands." Ex. E, Ex. F.

51.    Parallel consistently ratifies Goodblend's established places of business in Texas, including in this District, as its own places of business.

52.    Parallel consistently represents that it maintains places of business in Texas including in this District.

53.    The Parallel website www.liveparallel.com states, "Parallel has ongoing operations in four high-growth medical and adult-use markets under its retail brands. Currently, we operate 50 retail stores, cultivation and manufacturing site in four states," which includes Goodblend's three stores in Texas and the "goodblend – Plano" location in this District. Ex. E.

54.    The Parallel website www.liveparallel.com lists Goodblend's three stores in Texas, including the "goodblend – Plano" location in this District, as one of the places "where you can find us." *Id.*



55.    The Parallel website further states:

Parallel is one of the largest privately-held, vertically-integrated, multi-state cannabis operators in the U.S. with active operations in three high-growth cannabis markets. In each market we are known

by distinct retail brand names:

- Florida: Surterra Wellness

- Massachusetts: NETA

- Texas: goodblend

Ex. F.

56.     Parallel ratifies and holds out each of its "retail brands," including Goodblend, as extensions of itself and as part of a single entity having consistent products and a consistent corporate ethos. The Parallel website states, for example, "[o]ur brands are about welcoming every type of customer. The Parallel ethos is based on a commitment to compliance, quality and innovation, and on our actions to improve diversity, inclusivity and economic empowerment in the cannabis industry, and to be a great employer and partner in local communities." Ex. E. It further states that Parallel "[o]ffer[s] a curated selection of high-quality and innovative cannabis brands and products, we promise our customers an experience that's as exceptional as it is consistent." Ex. G.

57.     According to a press release related to a debt restructuring dated September 22, 2023, and filed with the United States Securities and Exchange Commission, "Parallel has operations in five medical and adult-use markets under the retail brands of *Surterra Wellness* in Florida; *goodblend* in Texas and in Pennsylvania; *NETA* in Massachusetts, and a joint venture with the Cookies retail brand in Nevada. Parallel operates 50 store locations and cultivation and manufacturing sites across the United States." Ex. H. The press release also states, "**Texas**: Operating under the brand Goodblend, Parallel has two retail pick-up locations and a small cultivation facility." *Id*.

58.     On information and belief, Parallel finances its subsidiary Goodblend and pays salaries and/or other expenses of Goodblend.

59.    On information and belief, Parallel invested tens of millions of dollars in cannabis cultivation, production, and retail facilities in Texas, including in this District, for the benefit of Goodblend. On information and belief, Parallel released a press release that PRNewswire published, which states:

> Parallel, one of the largest privately-held multi-state cannabis operators in the United States (U.S.), today announced it will make a $25 million dollar investment in a new state-of-the art cannabis cultivation, production and retail facility in Texas. This financial commitment expands Parallel's ability to meet the growing patient demand for medical cannabis products in the Lone Star State. The planned 63,000 square-foot facility is expected to create hundreds of new jobs in the San Marcos region…. "With our $25 million dollar investment and name change to goodblend, we are strengthening our Texas roots to meet the needs of cannabis patients for the long term. We see high growth potential in the Texas cannabis market as every day more Texans choose cannabis to help improve their quality of life," said William "Beau" Wrigley Jr., Chairman and CEO for Parallel.

Ex. I.

60.    On information and belief, Parallel owns U.S. Trademark Registration No. 6,502,962, which protects the Goodblend mark for use with retail store services, and U.S. Trademark Registration No. 7,839,444, which protects the Goodblend mark for use with providing medical advisory services related to obtaining medical marijuana cards. *See, e.g.*, Ex. J, Ex. Z.

61.    On information and belief, Parallel controls the nature and quality of retail stores that Goodblend operates under the Goodblend mark and/or the nature and quality of services that Goodblend provides under the Goodblend mark.

62.    On information and belief, Parallel requires Goodblend to feature and use "Goodblend" branding, trademarks, and trade dress in advertisements and marketing materials and on Goodblend's website tx.goodblend.com.

63.    On information and belief, Parallel controls the manufacture and sale of products

by its subsidiary Goodblend in Texas and in this District.

64.    Goodblend sells products in Texas, including in this District, that bear the names of Parallel proprietary product brands including, for example, "Heights" THC Chocolate Bar products. *See* Ex. K, Ex. L, Ex. M.

65.    On information and belief, Parallel maintains total control over and directs Goodblend's actions, sales, and services, and Parallel consented to Goodblend acting on Parallel's behalf in selling, offering to sell, and/or distributing products, including products that infringe claims of the Asserted Patents, in Texas and in this District.

66.    Parallel recruits Texas residents, either directly or through one or more intermediaries, for employment inside and outside of Texas.

67.    On information and belief, Parallel controls the recruiting, hiring, training, compensation, and benefits of Goodblend employees directly and/or through one or more intermediaries.

68.    The "careers" section of the Parallel webpage www.liveparallel.com/careers displays clickable text "VIEW ALL POSITIONS," which redirects to a third-party webpage job-boards.greenhouse.io/paralleljobs entitled "Current opportunities at Parallel (Surterra Wellness, NETA, Goodblend)" and includes job postings for positions at Goodblend locations in Texas. *See* Ex. F, Ex. N.

69.    A posting for a position at a Goodblend location in Texas states, "Parallel is one of the largest multi-state cannabis companies in the world, owning and operating in three markets; Florida (Surterra Wellness), Massachusetts (NETA) and Texas (Surterra Wellness)." Ex. P. The posting also states, "**Our Mission** – how we will do this – is to build a leading, global well-being company through the best talent, our values, trusted and recognized brands, science and

technology-based innovation, and a relentless focus on execution and continuous improvement." *Id*.; *see also* Ex. O.

70.    The Goodblend website tx.goodblend.com displays clickable text "CAREERS," which redirects to the same third-party webpage job-boards.greenhouse.io/paralleljobs, entitled "Current opportunities at Parallel (Surterra Wellness, NETA, Goodblend)," to which the Parallel webpage www.liveparallel.com/careers also redirects. Ex. F, Ex. N.

71.    The Parallel webpage www.liveparallel.com/about states, "Parallel seeks to build a leading well-being company through attracting the best talent, focusing our values, expanding our trusted and recognized brands, investing in science and technology-based innovation. . . ." Ex. G. The Parallel webpage www.liveparallel.com/careers states, "Parallel is building a leading well-being company and are looking for the best, most diverse talent to join our team. We have a high-performance, inclusive, and employee-focused culture, that focuses just as much on how we do things as on what we do. We strive for the highest compliance to our laws and regulations, while finding the most efficient and innovation solutions that will benefit how we continue to serve our customers." Ex. F.

72.    On information and belief, Parallel operates the Goodblend website tx.goodblend.com. The terms and conditions on the Goodblend website state, for example, "[t]he website located at [tx.goodblend.com], is a copyrighted work belonging to Surterra Texas, LLC, a Texas limited liability company, or its direct or indirect affiliates, subsidiaries, parent company, or other related companies (collectively, **"Parallel," "us," "our,"** and/or **"we"**)," and, "**Parallel Contact Information:** Please direct any comments or questions that you may have regarding these Terms and Conditions to: 55 Ivan Allen Jr. Blvd. NW, Suite 900, Atlanta, GA, 30308 or **NOTICE@LIVEPARALLEL.COM**, Attn: Legal Department." Ex. R. On information and

belief, Parallel owns and operates the email account notice@liveparallel.com.

73.    Parallel specifically targets and advertises to consumers in Texas including the Eastern District of Texas to sell products made by infringing methods. For example, the Parallel website hosts a marketing "announcement" for a "CannaBus Tour" across Texas to "bring awareness to the state's medical cannabis program and provide a simple experience to prospective patients who need a medical cannabis prescription." The bus tour includes a "personalized Q&A session with a Goodblend dispensary guide, and eligibility for exclusive product promotional offers." Ex. S.

## THE ASSERTED PATENTS

74.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1-73 as though fully set forth herein.

75.    The '248 patent, entitled "Methods to Chemically Modify Cannabinoids," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on June 2, 2020, and names C. Russell Thomas and Matthew M. DePalo as inventors. A true and correct copy of the '248 patent is attached as Exhibit A.

76.    The '248 patent is valid and enforceable.

77.    Messrs. Thomas and DePalo assigned their inventions as disclosed in the '248 patent to NES. NES is the owner by assignment of all rights, title, and interest to and in the '248 patent with the sole right to enforce the '248 patent and sue for infringement.

78.    The '402 patent, entitled "Gas Phase Methods to Decarboxylate Cannabinoids," was duly and legally issued by the USPTO on May 9, 2023, and names C. Russell Thomas and Matthew M. DePalo as inventors. A true and correct copy of the '402 patent is attached as Exhibit B.

79.     The '402 patent is valid and enforceable.

80.     Messrs. Thomas and DePalo assigned their inventions as disclosed in the '402 patent to NES. NES is the owner by assignment of all rights, title, and interest to and in the '402 patent with the sole right to enforce the '402 patent and sue for infringement.

81.     The '181 patent, entitled "Methods to Chemically Modify Cannabinoids," was duly and legally issued by the USPTO on May 13, 2025, and names C. Russell Thomas and Matthew M. DePalo as inventors. A true and correct copy of the '181 patent is attached as Exhibit C.

82.     The '181 patent is valid and enforceable.

83.     Messrs. Thomas and DePalo assigned their inventions as disclosed in the '181 patent to NES. NES is the owner by assignment of all rights, title, and interest to and in the '181 patent with the sole right to enforce the '181 patent and sue for infringement.

84.     The '214 patent, entitled "Methods to Produce Products Comprising Cannabinoids," was duly and legally issued by the USPTO on September 23, 2025, and names C. Russell Thomas and Matthew M. DePalo as inventors. A true and correct copy of the '214 patent is attached as Exhibit D.

85.     The '214 patent is valid and enforceable.

86.      Messrs. Thomas and DePalo assigned their inventions as disclosed in the '214 patent to NES. NES is the owner by assignment of all rights, title, and interest to and in the '214 patent with the sole right to enforce the '214 patent and sue for infringement.

## FACTUAL BACKGROUND & DEFENDANTS' INFRINGEMENT

### A.  The '248 Patent

87.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-86 as though fully set forth herein.

88.    Claim 1 of the '248 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, in which the cannabinoids comprise a native cannabinoid molecule, the native cannabinoid molecule comprises a carboxyl group, and the native cannabinoid molecule is in a liquid phase or a solid phase;

contacting the composition with sufficient energy to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate, in which at least 95% of the native cannabinoid molecule is converted into the condensed cannabinoid molecule per mole; and

collecting the liquid distillate.

89.    Claim 2 of the '248 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, in which the cannabinoids comprise a native cannabinoid molecule, the native cannabinoid molecule comprises a carboxyl group, and the native cannabinoid molecule is in a liquid phase or a solid phase;

contacting the composition with sufficient energy to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate, in which the liquid distillate comprises the condensed cannabinoid molecule and cannabinol at a molar ratio greater than 100:1.

90.    Claim 8 of the '248 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, in which the cannabinoids comprise a native cannabinoid molecule, the native cannabinoid molecule comprises a carboxyl group, and the native cannabinoid molecule is in a liquid phase or a solid phase;

coating a heated surface with the composition at a surface-area-to-volume ratio of the composition that is greater than 500 per meter;

contacting the composition with sufficient energy to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate.

91.    Claim 12 of the '248 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, in which the composition has a surface-area-to-volume ratio greater than 1000 per meter; the cannabinoids comprise a native cannabinoid molecule; the native cannabinoid molecule comprises a carboxyl group; and the native cannabinoid molecule is in a liquid phase or a solid phase;

contacting the composition with sufficient energy to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate.

92.    On information and belief, Defendants make cannabis distillate with methods that satisfy each and every limitation of at least claims 1, 2, 8, and 12 of the '248 patent either literally or under the doctrine of equivalents.

93.    Cannabis flowers contain a variety of naturally occurring molecules called

cannabinoids. THCA is a native cannabinoid molecule found naturally in various strains of the cannabis plant.

94.     Defendants extract cannabis oil from cannabis plants. The resultant cannabis extracts contain the native cannabinoid molecule THCA.

95.     THCA lacks robust psychoactive effects. THCA may be converted into the psychoactive molecule THC by a chemical process called decarboxylation. THC and its active metabolite 11-hydroxy-Δ9-tetrahydrocannabinol display psychoactive effects.

96.     THCA comprises a carboxyl group.

97.     Decarboxylation removes the carboxyl group from the THCA molecule to form a THC molecule and a carbon dioxide molecule.

98.     Defendants make cannabis distillate using methods that modify the native cannabinoid molecule THCA to form THC and carbon dioxide.

99.     Cannabinol ("CBN") is a thermal oxidation product of THCA.

100.    CBN can cause drowsiness, paranoia, and confusion in humans.

101.    Decarboxylating THCA under certain conditions converts some of the THCA into CBN.

102.    On information and belief, Defendants make and sell products made with cannabis distillate that contains approximately 100 milligrams of THC and 0% CBN, for example, the Heights Dark Chocolate Bar 100 mg. *See* Ex. L, Ex. M. Such products have a molar ratio of THC to CBN of greater than 100:1.

103.    On information and belief, Defendants make and sell other products made with cannabis distillate that contains THC and 0% CBN, for example, the "Dark Chocolate Mint (THC) – Chocolate Bar, 100mg," the "Dark Chocolate (THC) – Chocolate Bar, 100mg," and "Heights"

Cannabis-Infused Gummies in various flavors and THC contents. *See, e.g.*, Ex. T, Ex. U.

104. On information and belief, Defendants practice the methods disclosed and claimed in the Asserted Patents to produce cannabis distillates that comprise THC and no CBN.

105. On information and belief, compositions that Defendants provide for distillation comprise the native cannabinoid molecule THCA, which comprises a carboxyl group.

106. On information and belief, Defendants perform wiped-film distillation on compositions comprising cannabinoids that include THCA to make cannabis distillate. *See* Ex. AC.

107. On information and belief, Defendants purchased one or more wiped-film distillation systems from Root Sciences LLC (Washington, United States) or an affiliate thereof (collectively, "Root Sciences"). *See* Ex. V.

108. On information and belief, the wiped-film distillation system(s) that Defendants purchased from Root Sciences were manufactured by the German company Verfahrenstechnische Anlagen GmbH & Co. KG, which is commonly called VTA. *See* Ex. W; *see also* Ex. Q.

109. On information and belief, Defendants manufacture cannabis distillates using processes that lack a separate decarboxylation step, in which a cannabis extract is heated above 212° Fahrenheit to convert THCA into THC prior to distillation.

110. On information and belief, Defendants operate one or more wiped-film distillation systems to make distillates that comprise THC.

111. The input to Defendants' wiped-film distillation system is a liquid.

112. On information and belief, Defendants operate one or more wiped-film distillation systems by providing compositions that comprise liquid-phase THCA.

113. On information and belief, Defendants operate one or more wiped-film distillation

systems by contacting compositions comprising cannabinoids with sufficient energy to evaporate cannabinoids (by heating cannabis extracts to an elevated temperature) such that the cannabinoids enter a gas phase as a vapor.

114.    On information and belief, Defendants contact compositions comprising cannabinoids with energy to evaporate cannabinoids, and the energy converts the native cannabinoid molecule THCA into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase, *i.e.*, gas-phase THC.

115.    On information and belief, each of the wiped-film distillation systems that Defendants operate is equipped with a cold trap. *See* Ex. W.

116.    The cold traps in Defendants' wiped-film distillation systems are heat sinks.

117.    On information and belief, in wiped-film distillation systems, Defendants condense gas phase THC into a liquid distillate by contacting the gas-phase THC with a cold trap.

118.    On information and belief, Defendants then collect the distillate from their wiped-film distillation systems, which they use to make consumer products that contain the distillate.

119.    On information and belief, Defendants make and sell cannabis-distillate-containing products that contain THC and 0% THCA, for example, Heights Dark Chocolate Bar 100 mg. Ex. L, Ex. M.

120.    On information and belief, Defendants make and sell other products that contain THC and 0% THCA, for example, Heights Cannabis-Infused Gummies in various flavors and THC contents. *See, e.g.*, Ex. U.

121.    Thus, on information and belief, the distillation process used by Defendants to make the distillate contained in these products converts at least 95% of the native cannabinoid molecule THCA (*i.e.*, all of the THCA) of the provided composition comprising cannabinoids into

THC.

122.    On information and belief, Defendants make and sell cannabis products that contain THC and 0% CBN, for example, the Heights Dark Chocolate Bar 100 mg. *See* Ex. L, Ex. M.

123.    On information and belief, Defendants make and sell other products that contain THC and 0% CBN, for example, Heights Cannabis-Infused Gummies in various flavors and THC contents. *See, e.g.*, Ex. U.

124.    Thus, on information and belief, the distillate used by Defendants to make these products comprises the condensed cannabinoid molecules THC and CBN at a molar ratio greater than 100:1.

125.    On information and belief, Defendants perform wiped-film distillations on compositions comprising cannabinoids to make cannabis distillate.

126.    On information and belief, each wiped-film distillation system that Defendants operate comprises a mechanical wiper that spreads compositions comprising cannabinoids into a thin film across a heated surface. *See, e.g.*, Ex. X.

127.    On information and belief, the heated surface of each wiped-film distillation system that Defendants operate comprises a cylindrical inner surface.

128.    On information and belief, Defendants operate one or more wiped-film distillation systems by spreading compositions comprising cannabinoids into a thin film across the heated surface of each wiped-film distillation system.

129.    On information and belief, each wiped-film distillation system operated by Defendants produces a film that has a thickness of 100 to 500 microns.

130.    The film having a thickness of 100 to 500 microns on the cylindrical surface of the wiped-film distillation systems operated by Defendants has a surface-area-to-volume ratio that is

greater than both 1,000 per meter and 500 per meter.

## B. The '402 Patent

131.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1-130 as though fully set forth herein.

132.    Claim 1 of the '402 patent claims:

A method to chemically-modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, wherein the composition has a surface-area-to-volume ratio that is greater than 1000 per meter; the cannabinoids comprise a native cannabinoid molecule; the native cannabinoid molecule comprises a carboxyl group; and the native cannabinoid molecule is in either a liquid phase or a solid phase;

contacting the composition with sufficient energy to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate.

133.    Claim 8 of the '402 patent depends from Claim 1 and recites:

contacting the composition with the sufficient energy comprises conductively heating the composition.

134.    On information and belief, Defendants make cannabis distillate with methods that satisfy each and every limitation of at least claims 1 and 8 of the '402 patent either literally or under the doctrine of equivalents.

135.    On information and belief, Defendants perform wiped-film distillations on compositions comprising cannabinoids to make cannabis distillate.

136.    On information and belief, each wiped-film distillation system that Defendants

operate comprises a mechanical wiper that spreads compositions comprising cannabinoids into a thin film across a heated surface.

137.    On information and belief, the heated surface of each wiped-film distillation system that Defendants operate comprises a cylindrical inner surface.

138.    On information and belief, each wiped-film distillation system operated by Defendants produces a film that has a thickness of 100 to 500 microns.

139.    The film having a thickness of 100 to 500 microns on the cylindrical surface of the wiped-film distillation systems operated by Defendants has a surface-area-to-volume ratio that is greater than 1000 per meter.

140.    Each wiped-film distillation system operated by Defendants transfers energy from a heated surface to a thin film of liquid that is spread across the heated surface.

141.    Transferring energy from a heated surface to a thin film of liquid that is spread across the heated surface is a form of conductive heating.

142.    The wiped-film distillation systems operated by Defendants transfer energy by conductive heating.

143.    On information and belief, Defendants make cannabis distillate with methods that satisfy all other elements of claims 1 and 8 of the '402 patent for the reasons recited in this subsection B and in Paragraph Nos. 93-130 above with respect to the '248 patent.

**C. The '181 Patent**

144.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1-143 as though fully set forth herein.

145.    Claim 1 of the '181 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

22

providing a composition comprising cannabinoids, wherein the composition comprises an extracted oil that was extracted from a plant material of the genus *Cannabis,* the extracted oil comprises the cannabinoids, the cannabinoids comprise a native cannabinoid molecule, and the native cannabinoid molecule comprises a carboxyl group;

coating a heated surface with the composition at a surface-area-to-volume ratio of the composition that is greater than 500 per meter;

contacting the composition with sufficient energy from the heated surface to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate,

wherein:

the method comprises converting less than 2 percent of the native cannabinoid molecule into cannabinol by mole;

the method is performed such that the liquid distillate comprises the condensed cannabinoid molecule and cannabinol at a molar ratio of greater than 100:1; and

the method is performed such that the liquid distillate comprises cannabinol at a concentration of less than 0.8 percent by weight.

146.    Claim 2 of the '181 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, wherein the composition comprises an extracted oil that was extracted from a plant material of the genus *Cannabis,* the extracted oil comprises the cannabinoids, the cannabinoids comprise a native cannabinoid molecule, and the native cannabinoid molecule comprises a carboxyl group;

coating a heated surface with the composition at a surface-area-to-volume ratio of the composition that is greater than 500 per meter;

contacting the composition with sufficient energy from the heated surface to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate,

wherein the method is performed such that:

the liquid distillate comprises the condensed cannabinoid molecule and cannabinol at a molar ratio of greater than 100:1; and

the liquid distillate comprises the condensed cannabinoid molecule and delta-8-tetrahydrocannabinol at a molar ratio of greater than 300:1.

147.    Claim 4 of the '181 patent depends from Claim 2 and recites:

the native cannabinoid molecule is tetrahydrocannabinolic acid;

the modified cannabinoid molecule is tetrahydrocannabinol; and

the condensed cannabinoid molecule is tetrahydrocannabinol.

148.    Claim 9 of the '181 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, wherein the composition comprises an extracted oil that was extracted from a plant material of the genus *Cannabis*, the extracted oil comprises the cannabinoids, the cannabinoids comprise a native cannabinoid molecule, and the native cannabinoid molecule comprises a carboxyl group;

coating a heated surface with the composition at a surface-area-to-volume ratio of the composition that is greater than 500 per meter, wherein the heated surface is a surface of a thin-film evaporator;

contacting the composition with sufficient energy from the heated surface to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate.

149.    Claim 19 of the '181 patent depends from Claim 9 and recites:

the native cannabinoid molecule is tetrahydrocannabinolic acid;

the modified cannabinoid molecule is tetrahydrocannabinol;

the condensed cannabinoid molecule is tetrahydrocannabinol; and

the method is performed such that the liquid distillate comprises the condensed cannabinoid molecule and cannabinol at a molar ratio of greater than 100:1.

150.    Claim 21 of the '181 patent depends from Claim 9 and recites:

the native cannabinoid molecule is tetrahydrocannabinolic acid;

the modified cannabinoid molecule is tetrahydrocannabinol;

the condensed cannabinoid molecule is tetrahydrocannabinol; and

the method is performed such that the liquid distillate comprises the condensed cannabinoid molecule and delta-8-tetrahydrocannabinol at a molar ratio of greater than 300:1.

151.    On information and belief, Defendants make cannabis distillate with methods that satisfy each and every limitation of at least claims 1, 2, 4, 9, 19, and 21 of the '181 patent either literally or under the doctrine of equivalents.

152.    Defendants extract cannabis oil from flowers of cannabis plants, which are plants of the genus *Cannabis*. The resultant cannabis extracts contain the native cannabinoid molecule THCA.

153.    On information and belief, Defendants provide extracted oils that were extracted from plant material of the genus *Cannabis*, which comprise cannabinoids, for distillation via wiped-film distillation systems.

154.    Defendants make and sell products containing THC and 0% CBN, for example, Heights Dark Chocolate Bar 100 mg. *See* Ex. L, Ex. M. On information and belief, Defendants sell other products that contain THC and 0% CBN, for example, Heights Cannabis-Infused Gummies in various flavors and THC contents. *See* Ex. U. Thus, the distillation used to make these products converts less than 2% of THCA into CBN by mole, and the resultant distillates used in these products comprise CBN at a concentration of less than 0.8% by weight.

155.    Defendants make and sell products containing THC that do not list delta-8-tetrahydrocannabinol ("Δ-8-THC") as an ingredient, for example, the Heights Dark Chocolate Bar 100 mg and Heights Cannabis-Infused Gummies in various flavors and THC content. *See* Ex. L, Ex. M, Ex. U. Thus, on information and belief, these products contain 0% Δ-8-THC, and the distillation used to make these products is performed such that the liquid distillate comprises THC and Δ-8-THC at a molar ratio of greater than 300:1.

156.    On information and belief, Defendants make cannabis distillate that contains THC and no THCA from cannabis extracts that contain the native cannabinoid molecule THCA. The distillation process modifies the native cannabinoid molecule THCA, which is present in a liquid phase, to produce the modified cannabinoid molecule THC in a gas phase, which is then condensed into the condensed cannabinoid molecule THC in the cannabis distillate.

157.    On information and belief, Defendants perform wiped-film distillations on compositions comprising cannabinoids to make cannabis distillate.

158.    Defendants' wiped-film distillation systems are thin-film evaporators.

159.    On information and belief, Defendants make cannabis distillate with methods that satisfy all other elements of claims 1, 2, 4, 9, 19, and 21 of the '181 patent for the reasons recited in Paragraph Nos. 93-130 above with respect to the '248 patent and in Paragraph Nos. 135-142

above with respect to the '402 patent.

**D.  The '214 Patent**

160.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1-159 as though fully set forth herein.

161.    Claim 1 of the '214 patent recites:

> A method to produce a product comprising a cannabinoid, comprising:
>
> (a) providing a composition comprising cannabinoids, wherein (i) the composition has a surface area, (ii) the composition comprises less than 15 percent water by weight, (iii) the composition comprises an oil, (iv) the oil comprises the cannabinoids, (v) the cannabinoids comprise a native cannabinoid molecule, (vi) the native cannabinoid molecule comprises a carboxyl group, (vii) the native cannabinoid molecule is tetrahydrocannabinolic acid (THCA), (viii) the composition comprises at least 5 percent by weight of the cannabinoids, which are selected from tetrahydrocannabinolic acid (THCA), cannabidiolic acid (CBDA), tetrahydrocannabivarin carboxylic acid (THCVA), tetrahydrocannabinol (THC), cannabidiol (CBD), and tetrahydrocannabivarin (THCV), and (ix) the composition comprises at least 1 percent by weight tetrahydrocannabinolic acid (THCA);
>
> (b) contacting the composition with a heated surface and exposing the surface area of the composition to a vacuum to convert the native cannabinoid molecule into a modified cannabinoid molecule in a gas phase, wherein (x) contacting the composition with the heated surface heats the cannabinoids of the composition by conduction, and (xi) the modified cannabinoid molecule is tetrahydrocannabinol (THC);
>
> (c) condensing the modified cannabinoid molecule into a condensed cannabinoid molecule in a distillate, wherein (xii) the condensed cannabinoid molecule is tetrahydrocannabinol (THC); and
>
> (d) collecting the distillate.

162.    Claim 2 of the '214 patent depends from Claim 1 and recites:

the distillate comprises condensed cannabinoids selected from tetrahydrocannabinol (THC), tetrahydrocannabivarin (THCV), cannabidiol (CBD), and cannabinol (CBN);

the condensed cannabinoids comprise tetrahydrocannabinol (THC) and cannabinol (CBN); and

the condensed cannabinoids comprise less than 2 percent cannabinol (CBN) by weight.

163.    Claim 5 of the '214 patent depends from Claim 1 and recites:

providing a distillation apparatus, wherein:

the distillation apparatus is a thin-film evaporator and/or a short-path distillation apparatus;

the heated surface is a surface of the distillation apparatus;

contacting the composition with the heated surface comprises coating the heated surface with the composition;

the oil is an extracted oil from the genus Cannabis; and

heating the cannabinoids of the composition by conduction comprises contacting the composition with sufficient energy to convert the native cannabinoid molecule into (A) a carbon dioxide molecule and (B) the modified cannabinoid molecule in the gas phase.

164.    Claim 6 of the '214 patent depends from Claim 1 and recites:

providing a distillation apparatus, wherein:

the distillation apparatus is a thin-film evaporator and/or a short-path distillation apparatus;

the heated surface is a surface of the distillation apparatus;

contacting the composition with the heated surface comprises coating the heated surface with the composition;

the oil is an extracted oil from the genus *Cannabis*;

heating the cannabinoids of the composition by conduction comprises contacting the composition with sufficient energy to convert the native cannabinoid molecule into (A) a carbon dioxide

molecule and (B) the modified cannabinoid molecule in the gas phase; and

the distillate comprises cannabinol (CBN) at a concentration of less than 2 percent by weight.

165.    Claim 18 of the '214 patent recites:

A method to produce a product comprising a cannabinoid, comprising:

(a) providing a distillation apparatus, wherein (i) the distillation apparatus is a thin-film evaporator and/or a short-path distillation apparatus;

(b) providing a composition comprising cannabinoids, wherein (ii) the composition has a surface area, (iii) the composition comprises less than 15 percent water by weight, (iv) the composition comprises an oil, (v) the oil comprises the cannabinoids, (vi) the oil is an extracted oil from the genus *Cannabis*, (vii) the cannabinoids comprise a native cannabinoid molecule, (viii) the native cannabinoid molecule comprises a carboxyl group, (ix) the native cannabinoid molecule is tetrahydrocannabinolic acid (THCA), (x) the composition comprises at least 5 percent by weight of the cannabinoids, which are selected from tetrahydrocannabinolic acid (THCA), cannabidiolic acid (CBDA), tetrahydrocannabivarin carboxylic acid (THCVA), tetrahydrocannabinol (THC), cannabidiol (CBD), and tetrahydrocannabivarin (THCV), and (xi) the composition comprises at least 1 percent by weight tetrahydrocannabinolic acid (THCA);

(c) contacting the composition with a heated surface and exposing the surface area of the composition to a vacuum to convert the native cannabinoid molecule into a modified cannabinoid molecule in a gas phase, wherein (xii) the heated surface is a surface of the distillation apparatus, (xiii) contacting the composition with the heated surface comprises coating the heated surface with the composition, (xiv) contacting the composition with the heated surface heats the cannabinoids of the composition by conduction, (xv) heating the cannabinoids of the composition by conduction comprises contacting the composition with sufficient energy to convert the native cannabinoid molecule into (A) a carbon dioxide molecule and (B) the modified cannabinoid molecule in the gas phase, and (xvi) the modified cannabinoid molecule is tetrahydrocannabinol (THC);

(d) condensing the modified cannabinoid molecule into a condensed cannabinoid molecule in a distillate less than 360 seconds after

converting the native cannabinoid molecule into the modified cannabinoid molecule in the gas phase, wherein (xvii) the condensed cannabinoid molecule is tetrahydrocannabinol (THC); and

(e) collecting the distillate.

166.    Claim 19 of the '214 patent depends from Claim 18 and recites:

the distillate comprises condensed cannabinoids selected from tetrahydrocannabinol (THC), cannabidiol (CBD), tetrahydrocannabivarin (THCV), and cannabinol (CBN); and

the condensed cannabinoids comprise less than 2 percent cannabinol (CBN) as a percentage by weight of the condensed cannabinoids.

167.    On information and belief, Defendants make cannabis distillate with methods that satisfy each and every limitation of at least claims 1, 2, 5, 6, 18, and 19 of the '214 patent either literally or under the doctrine of equivalents.

168.    Defendants make products comprising cannabinoids using methods by which Defendants introduce cannabis extracts (*i.e.*, compositions comprising cannabinoids) into wiped-film distillation systems.

169.    On information and belief, Defendants operate one or more wiped-film distillation systems, which are both thin-film evaporators and short-path distillation apparatuses, to manufacture cannabis distillates.

170.    The compositions comprising cannabinoids each have a surface area in Defendants' wiped-film distillation systems.

171.    On information and belief, the compositions comprising cannabinoids that Defendants introduce into wiped-film distillation systems comprise less than 15% water by weight.

172.    The compositions comprising cannabinoids that Defendants introduce into wiped-film distillation systems are oils that Defendants extract from plants of the genus *Cannabis*. On information and belief, the oils comprise cannabinoids including the native cannabinoid molecule THCA, which comprises a carboxyl group.

173.    On information and belief, the compositions comprising cannabinoids that Defendants introduce into wiped-film distillation systems comprise at least 5% by weight of the cannabinoids THCA and THC.

174.    On information and belief, the compositions comprising cannabinoids that Defendants introduce into wiped-film distillation systems comprise at least 1% by weight THCA.

175.    Defendants operate each wiped-film distillation system by contacting a cannabis extract with a heated surface of the distillation system and exposing the surface area of the cannabis extract to a vacuum to contact the cannabis extract with sufficient energy to convert the liquid-phase native cannabinoid molecule THCA into carbon dioxide and the gas-phase modified cannabinoid molecule THC.

176.    On information and belief, the gas phase within each distillation system that Defendants operate consists predominantly of cannabinoids and carbon dioxide, and the gas phase lacks sulfur dioxide at a concentration greater than 5 parts per million by volume.

177.    On information and belief, Defendants operate wiped-film distillation systems by coating a heated surface of each distillation system with a thin film of cannabis extract, which is performed by one or more wipers of the wiped-film distillation system.

178.    Defendants heat cannabinoids in their wiped-film distillation systems by conduction.

179.    Defendants operate wiped-film distillation systems by condensing gas-phase THC into liquid-phase THC (*i.e.*, a condensed cannabinoid molecule) in a distillate and then collecting the distillate.

180.    On information and belief, Defendants operate wiped-film distillation systems by condensing gas-phase THC into liquid-phase THC less than 360 seconds after converting liquid-

phase THCA into gas-phase THC.

181.    On information and belief, the distillates that Defendants collect from their wiped-film distillation systems typically comprise CBN at a concentration of less than 0.5% CBN by weight.

182.    On information and belief, Defendants make cannabis distillates with methods that satisfy all other elements of claims 1, 2, 5, 6, 18, and 19 of the '214 patent for the reasons recited in Paragraph Nos. 93-130 above with respect to the '248 patent, in Paragraph Nos. 135-142 above with respect to the '402 patent, and in Paragraph Nos. 152-158 above with respect to the '181 patent.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 10,669,248

183.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1-182 as though fully set forth herein.

### A.  Direct Infringement (35 U.S.C. §§ 271(a) and (g))

184.    For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '248 patent, including at least claims 1, 2, 8, and 12, by practicing processes to make cannabis distillate that satisfy all of the limitations of said claims in the United States without authorization. Thus, Defendants are liable for infringement of the '248 patent under 35 U.S.C. § 271(a).

185.    For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '248 patent, including at least claims 1, 2, 8, and 12, by offering to sell, selling, and/or using within the United States cannabis-distillate-containing products made by a process patented

in the '248 Patent without authorization. Thus, Defendants are liable for infringement of the '248 patent under 35 U.S.C. § 271(g).

186.    On information and belief, Defendant Parallel has been and is still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '248 patent, including at least claims 1, 2, 8, and 12, through its direct involvement in the infringing activities of its subsidiaries and alter egos, including but not limited to its Texas subsidiary and alter ego Goodblend. Goodblend conducts activities that constitute direct infringement of the '248 patent under 35 U.S.C. § 271(a) and (g). Parallel is liable for the infringing acts of its subsidiaries and alter egos, including Goodblend, under both alter ego and agency precedent, for example, because Parallel and its subsidiaries are essentially the same company, because Parallel has the right and ability to control its subsidiaries' infringing acts, and because Parallel receives a direct financial benefit from the infringing acts of its subsidiaries including Goodblend.

187.    NES has suffered damages as a result of Defendants' infringement of the '248 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the claims of the '248 patent.

**B.  Induced Infringement (35 U.S.C. § 271(b))**

188.    Defendants have had actual knowledge both of the '248 patent and that their processes to make cannabis distillate infringe at least one claim thereof at least as of the filing date of this complaint.

189.    On information and belief, subsidiaries and alter egos of Parallel, including Goodblend, perform processes to make cannabis distillate that directly infringe at least claims 1,

2, 8, and 12 of the '248 patent under 35 U.S.C. § 271(a) and (g).

190.    On information and belief, Parallel actively, knowingly, and intentionally instructed, directed, and/or advised—and continues to actively, knowingly, and intentionally instruct, direct, and/or advise—its subsidiaries and alter egos, including Goodblend, to perform processes that directly infringe at least claims 1, 2, 8, and 12 of the '248 patent.

191.    On information and belief, Parallel actively, knowingly, and intentionally induced—and continues to actively, knowingly, and intentionally induce—its subsidiaries and alter egos, including Goodblend, to sell products made by processes that directly infringe at least claims 1, 2, 8, and 12 of the '248 patent in the United States.

192.    On information and belief, Parallel controls the manufacture and sale of products by its subsidiaries including Goodblend in Texas.

193.    On information and belief, Goodblend sells products in Texas, including in this District, that bear the names of Parallel proprietary product brands including, for example, "Heights" THC Chocolate Bar products. Ex. K, Ex. L, Ex. M.

194.    On information and belief, Parallel makes and sells many of the same products through its retail brands Surterra Wellness in Florida, Goodblend in Texas, and NETA in Massachusetts. For example, Parallel sells its Heights products including the Heights Dark Chocolate Bar 100 mg in all three of these markets. Ex. L, Ex. M, Ex. AD, Ex. AB.

195.    On information and belief, Parallel directs and instructs its subsidiaries and alter egos to make products in their respective states based upon procedures and standards that Parallel dictates.

196.    On information and belief, Parallel created, established, and enforces upon its subsidiaries and alter egos, including Goodblend, standard operating procedures that infringe the

claims of the '248 patent. Ex. Q, Ex. AC.

197.    Thus, on information and belief, Parallel actively, knowingly, and intentionally induced, encouraged, and facilitated—and continues to actively, knowingly, and intentionally induce, encourage, and facilitate—its subsidiaries and alter egos, including Goodblend, to directly infringe at least claims 1, 2, 8, and 12 of the '248 patent under 35 U.S.C. § 271(b).

198.    NES has suffered damages as a result of Defendants' infringement of the '248 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the claims of the '248 patent.

**COUNT II**
**INFRINGEMENT OF U.S. PATENT NO. 11,643,402**

199.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1-198 as though fully set forth herein.

**A.  Direct Infringement (35 U.S.C. §§ 271(a) and (g))**

200.    For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '402 patent including at least claims 1 and 8 by practicing processes to make cannabis distillate that satisfy all of the limitations of said claims in the United States without authorization. Thus, Defendants are liable for infringement of the '402 patent under 35 U.S.C. § 271(a).

201.    For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '402 patent, including at least claims 1 and 8, by offering to sell, selling, and/or using within the United States cannabis-distillate-containing products made by a process patented in the

'402 patent without authorization. Thus, Defendants are liable for infringement of the '402 patent under 35 U.S.C. § 271(g).

202.     On information and belief, Parallel has been and is still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '402 patent, including at least claims 1and 8 through its direct involvement in the infringing activities of its subsidiaries and alter egos, including but not limited to its Texas subsidiary and alter ego Goodblend. Goodblend conducts activities that constitute direct infringement of the '402 patent under 35 U.S.C. § 271(a) and (g). Parallel is liable for the infringing acts of its subsidiaries and alter egos, including Goodblend, under both alter ego and agency precedent, for example, because Parallel and its subsidiaries are essentially the same company, because Parallel has the right and ability to control its subsidiaries' infringing acts, and because Parallel receives a direct financial benefit from the infringing acts of its subsidiaries including Goodblend.

203.     NES has suffered damages as a result of Defendants' infringement of the '402 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the claims of the '402 patent.

**B.  Induced Infringement (35 U.S.C. § 271(b))**

204.     Defendants have had actual knowledge both of the '402 patent and that their processes to make cannabis distillate infringe at least one claim thereof at least as of the filing date of this complaint.

205.     On information and belief, subsidiaries and alter egos of Parallel, including Goodblend, perform processes to make cannabis distillate that directly infringe at least claims 1

and 8 of the '402 patent under 35 U.S.C. § 271(a) and (g).

206.    On information and belief, Parallel actively, knowingly, and intentionally instructed, directed, and/or advised—and continues to actively, knowingly, and intentionally instruct, direct, and/or advise—its subsidiaries and alter egos, including Goodblend, to perform processes that directly infringe at least claims 1 and 8 of the '402 patent.

207.    On information and belief, Parallel actively, knowingly, and intentionally induced—and continues to actively, knowingly, and intentionally induce—its subsidiaries and alter egos, including Goodblend, to sell products made by processes that directly infringe at least claims 1 and 8 of the '402 patent in the United States.

208.    On information and belief, Parallel controls the manufacture and sale of products by its subsidiaries including Goodblend in Texas.

209.    On information and belief, Goodblend sells products in Texas, including in this District, that bear the names of Parallel proprietary product brands including, for example, "Heights" THC Chocolate Bar products. Ex. K, Ex. L, Ex. M.

210.    On information and belief, Parallel makes and sells many of the same products through its retail brands Surterra Wellness in Florida, Goodblend in Texas, and NETA in Massachusetts. For example, Parallel sells its Heights products including the Heights Dark Chocolate Bar 100 mg in all three of these markets. Ex. L, Ex. M, Ex. AD, Ex. AB.

211.    On information and belief, Parallel directs and instructs its subsidiaries and alter egos to make products in their respective states based upon procedures and standards that Parallel dictates.

212.    On information and belief, Parallel created, established, and enforces upon its subsidiaries and alter egos, including Goodblend, standard operating procedures that infringe

claims of the '402 patent. Ex. Q, Ex. AC.

213.    Thus, on information and belief, Parallel actively, knowingly, and intentionally induced, encouraged, and facilitated—and continues to actively, knowingly, and intentionally induce, encourage, and facilitate—its subsidiaries and alter egos, including Goodblend, to directly infringe at least claims 1 and 8 of the '402 patent under 35 U.S.C. § 271(b).

214.    NES has suffered damages as a result of Defendants' infringement of the '402 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the claims of the '402 patent.

**COUNT III**
**INFRINGEMENT OF U.S. PATENT NO. 12,297,181**

215.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1-214 as though fully set forth herein.

**A.  Direct Infringement (35 U.S.C. §§ 271(a) and (g))**

216.    For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '181 patent, including at least claims 1, 2, 4, 9, 19, and 21, by practicing processes to make cannabis distillate that satisfy all of the limitations of said claims in the United States without authorization. Thus, Defendants are liable for infringement of the '181 patent under 35 U.S.C. § 271(a).

217.    For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '181 patent, including at least claims 1, 2, 4, 9, 19, and 21, by offering to sell, selling,

and/or using within the United States cannabis-distillate-containing products made by a process patented in the '181 patent without authorization. Thus, Defendants are liable for infringement of the '181 patent under 35 U.S.C. § 271(g).

218.    On information and belief, Parallel has been and is still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '181 patent, including at least claims 1, 2, 4, 9, 19, and 21, through its direct involvement in the infringing activities of its subsidiaries and alter egos, including but not limited to its Texas subsidiary and alter ego Goodblend. Goodblend conducts activities that constitute direct infringement of the '181 patent under 35 U.S.C. § 271(a) and (g). Parallel is liable for the infringing acts of its subsidiaries and alter egos, including Goodblend, under both alter ego and agency precedent, for example, because Parallel and its subsidiaries are essentially the same company, because Parallel has the right and ability to control its subsidiaries' infringing acts, and because Parallel receives a direct financial benefit from the infringing acts of its subsidiaries including Goodblend.

219.    NES has suffered damages as a result of Defendants' infringement of the '181 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the claims of the '181 patent.

## B.  Induced Infringement (35 U.S.C. § 271(b))

220.    Defendants have had actual knowledge both of the '181 patent and that their processes to make cannabis distillate infringe at least one claim thereof at least as of the filing date of this complaint.

221.    On information and belief, subsidiaries and alter egos of Parallel, including

Goodblend, perform processes to make cannabis distillate that directly infringe at least claims 1, 2, 4, 9, 19, and 21 of the '181 patent under 35 U.S.C. § 271(a) and (g).

222.    On information and belief, Parallel actively, knowingly, and intentionally instructed, directed, and/or advised—and continues to actively, knowingly, and intentionally instruct, direct, and/or advise—its subsidiaries and alter egos, including Goodblend, to perform processes that directly infringe at least claims 1, 2, 4, 9, 19, and 21 of the '181 patent.

223.    On information and belief, Parallel actively, knowingly, and intentionally induced—and continues to actively, knowingly, and intentionally induce—its subsidiaries and alter egos, including Goodblend, to sell products made by processes that directly infringe at least claims 1, 2, 4, 9, 19, and 21 of the '181 patent in the United States.

224.    On information and belief, Parallel controls the manufacture and sale of products by its subsidiaries including Goodblend in Texas.

225.    On information and belief, Goodblend sells products in Texas, including in this District, that bear the names of Parallel proprietary product brands including, for example, "Heights" THC Chocolate Bar products. Ex. K, Ex. L, Ex. M.

226.    On information and belief, Parallel makes and sells many of the same products through its retail brands Surterra Wellness in Florida, Goodblend in Texas, and NETA in Massachusetts. For example, Parallel sells its Heights products including the Heights Dark Chocolate Bar 100 mg in all three of these markets. Ex. L, Ex. M, Ex. AD, Ex. AB.

227.    On information and belief, Parallel directs and instructs its subsidiaries and alter egos to make products in their respective states based upon procedures and standards that Parallel dictates.

228.    On information and belief, Parallel created, established, and enforces upon its

subsidiaries and alter egos, including Goodblend, standard operating procedures that infringe claims of the '181 patent. Ex. Q, Ex. AC.

229.    Thus, on information and belief, Parallel actively, knowingly, and intentionally induced, encouraged, and facilitated—and continues to actively, knowingly, and intentionally induce, encourage, and facilitate—its subsidiaries and alter egos, including Goodblend, to directly infringe at least claims 1, 2, 4, 9, 19, and 21 of the '181 patent under 35 U.S.C. § 271(b).

230.    NES has suffered damages as a result of Defendants' infringement of the '181 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the claims of the '181 patent.

**COUNT IV**
**INFRINGEMENT OF U.S. PATENT NO. 12,420,214**

231.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1-230 as though fully set forth herein.

**A.  Direct Infringement (35 U.S.C. §§ 271(a) and (g))**

232.    For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '214 patent, including at least claims 1, 2, 5, 6, 18, and 19, by practicing processes to make cannabis distillate that satisfy all of the limitations of said claims in the United States without authorization. Thus, Defendants are liable for infringement of the '214 patent under 35 U.S.C. § 271(a).

233.    For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more

claims of the '214 patent, including at least claims 1, 2, 5, 6, 18, and 19, by offering to sell, selling, and/or using within the United States cannabis-distillate-containing products made by a process patented in the '214 patent without authorization. Thus, Defendants are liable for infringement of the '214 patent under 35 U.S.C. § 271(g).

234.    On information and belief, Parallel has been and is still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '214 patent, including at least claims 1, 2, 5, 6, 18, and 19, through its direct involvement in the infringing activities of its subsidiaries and alter egos, including but not limited to its Texas subsidiary and alter ego Goodblend. Goodblend conducts activities that constitute direct infringement of the '214 patent under 35 U.S.C. § 271(a) and (g). Parallel is liable for the infringing acts of its subsidiaries and alter egos, including Goodblend, under both alter ego and agency precedent, for example, because Parallel and its subsidiaries are essentially the same company, because Parallel has the right and ability to control its subsidiaries' infringing acts, and because Parallel receives a direct financial benefit from the infringing acts of its subsidiaries including Goodblend.

235.    NES has suffered damages as a result of Defendants' infringement of the '214 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the claims of the '214 patent.

**B.  Induced Infringement (35 U.S.C. § 271(b))**

236.    Defendants have had actual knowledge both of the '214 patent and that their processes to make cannabis distillate infringe at least one claim thereof at least as of the filing date of this complaint.

237.    On information and belief, subsidiaries and alter egos of Parallel, including Goodblend, perform processes to make cannabis distillate that directly infringe at least claims 1, 2, 5, 6, 18, and 19 of the '214 patent under 35 U.S.C. § 271(a) and (g).

238.    On information and belief, Parallel actively, knowingly, and intentionally instructed, directed, and/or advised—and continues to actively, knowingly, and intentionally instruct, direct, and/or advise—its subsidiaries and alter egos, including Goodblend, to perform processes that directly infringe at least claims 1, 2, 5, 6, 18, and 19 of the '214 patent.

239.    On information and belief, Parallel actively, knowingly, and intentionally induced—and continues to actively, knowingly, and intentionally induce—its subsidiaries and alter egos, including Goodblend, to sell products made by processes that directly infringe at least claims 1, 2, 5, 6, 18, and 19 of the '214 patent in the United States.

240.    On information and belief, Parallel controls the manufacture and sale of products by its subsidiaries including Goodblend in Texas.

241.    On information and belief, Goodblend sells products in Texas, including in this District, that bear the names of Parallel proprietary product brands including, for example, "Heights" THC Chocolate Bar products. Ex. K, Ex. L, Ex. M.

242.    On information and belief, Parallel makes and sells many of the same products through its retail brands Surterra Wellness in Florida, Goodblend in Texas, and NETA in Massachusetts. For example, Parallel sells its Heights products including the Heights Dark Chocolate Bar 100 mg in all three of these markets. Ex. L, Ex. M, Ex. AD, Ex. AB.

243.    On information and belief, Parallel directs and instructs its subsidiaries and alter egos to make products in their respective states based upon procedures and standards that Parallel dictates.

244.    On information and belief, Parallel created, established, and enforces upon its subsidiaries and alter egos, including Goodblend, standard operating procedures that infringe the '214 patent. Ex. Q, Ex. AC.

245.    Thus, on information and belief, Parallel actively, knowingly, and intentionally induced, encouraged, and facilitated—and continues to actively, knowingly, and intentionally induce, encourage, and facilitate—its subsidiaries and alter egos, including Goodblend, to directly infringe at least claims 1, 2, 5, 6, 18, and 19 of the '214 patent under 35 U.S.C. § 271(b).

246.    NES has suffered damages as a result of Defendants' infringement of the '214 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the claims of the '214 patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) A judgment that Defendants have infringed claims of the '248, '402, '181, and '214 patents;

(b) A judgment and order permanently enjoining Defendants, together with their directors, officers, agents, servants, employees, attorneys, parents, subsidiaries, divisions, affiliates, other related business entities, and all persons in active concert or privity with them, and their successors and assigns, from directly and indirectly infringing the claims of the '248, '402, '181, and '214 patents;

(c) A judgment that awards NES damages adequate to compensate for Defendants' infringing activities, including lost profits, but in no event less than a reasonable royalty, in

accordance with 35 U.S.C. § 284, including supplemental damages for any post-verdict infringement up until entry of final judgment with an accounting, as needed, together with pre-judgment and post-judgment interest on the damages awarded;

(d) In the event that a permanent injunction is not granted, damages for any continuing future infringement of the '248, '402, '181, and '214 patents;

(e) A judgment declaring that Defendants' infringement has been willful and awarding enhanced damages under 35 U.S.C. § 284;

(f) Finding that this case is exceptional under 35 U.S.C. § 285, and awarding NES its reasonable attorneys' fees incurred in connection with this action;

(g) Awarding NES its costs and expenses in this action; and

(h) Awarding NES such other and further relief as this Court deems just and appropriate.

Dated: January 12, 2026

Respectfully Submitted,

*/s/ Deron R. Dacus*
Deron R. Dacus
The Dacus Firm, P.C.
Texas Bar No. 00790553
ddacus@dacusfirm.com
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone/Fax: (903) 705-1117

Frank C. Cimino, Jr.
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC  20001
Telephone: (202) 344-4569
Facsimile: (202) 344-8300
fccimino@venable.com

William E. Solander
James R. Tyminski
Robert E. Bugg
VENABLE LLP
151 West 42nd Street
New York, NY 10036
Telephone: (212) 370-6241
Facsimile: (212) 307-5598
wsolander@venable.com
jtyminski@venable.com
rebugg@venable.com

*Attorneys for Plaintiff Natural Extraction Systems, LLC*